**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

INTERCARIBBEAN AIRWAYS, LTD.,

Plaintiff,

v.

TRAVEL AND TOUR WORLD,

Defendant.

Case No. 25-8604

## COMPLAINT

interCaribbean Airways, Ltd. ("interCaribbean"), by and through its counsel, respectfully files its Complaint against Travel and Tour World ("TTW") for: (1) defamation, and (2) tortious interference with business relations. In support of its Complaint, interCaribbean states as follows:

## INTRODUCTION

1. interCaribbean is a regional airline in the Caribbean that has been operating out of the Turks & Caicos Islands for more than 33 years.

2. interCaribbean took on its current name in 2013 and has continued to grow to new destinations across the Caribbean.

3. Despite its longevity, growth, and success, TTW has made interCaribbean a target of false and defamatory attacks in recent weeks.

4. TTW holds itself out as a "comprehensive B2B travel e-magazine and news portal" reaching "more than 20 million readers globally."[1]

[1] https://www.travelandtourworld.com/about-us/

5. On information and belief, TTW is little more than a pay-to-play marketing website that uses AI-generated articles as a substitute for actual news.

6. Since August 14, 2025, TTW has repeatedly published false and defamatory statements about interCaribbean, portraying the airline as suffering from continuous operational disruptions that simply do not exist.

7. After informal efforts to address this issue with TTW failed, interCaribbean sent a demand letter through counsel on September 26, 2025, seeking retraction of the false and defamatory articles. A true and correct copy of that letter is attached as **Exhibit A**.

8. TTW not only ignored that letter, but doubled down on its improper conduct, posting an ***additional*** 20 false and defamatory articles since that date — indeed, TTW continues to post substantially similar articles so frequently that it is difficult to keep track of the sheer magnitude of the defamation.

9. interCaribbean therefore files this lawsuit to hold TTW responsible for its false and defamatory statements, ongoing disparagement of interCaribbean, and efforts to interfere with interCaribbean's business.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

11. interCaribbean is a Turks & Caicos Islands corporation, with its principal place of business in the Turks & Caicos Islands.

12. TTW is headquartered at 244 5th Avenue, Suite 2468, New York, NY 10001.

13. The Court has personal jurisdiction over TTW because it is a resident of the state covered by this District.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because TTW is a resident of the area covered by this District.

## FACTUAL BACKGROUND

15. The facts of this case are simple: Since August 14, 2025, TTW has published at least ***44*** false and defamatory articles about interCaribbean on www.travelandtourworld.com (the "Website").

16. On August 14, 2025, TTW published its first article attributing flight cancellations by interCaribbean Airways to "Tropical Storm Ernesto." A true and correct copy of that article is attached as **Exhibit B**.

17. Tropical Storm Ernesto occurred in August 2024, not 2025. Thus, the assertion in the article that interCaribbean canceled flights on August 14, 2025 because of Tropical Storm Ernesto is plainly false.

18. In reality, the only significant weather event in recent months that has had a widespread impact on interCaribbean's operations was Tropical Storm Erin, which temporarily affected operations only between August 17, 2025, and August 19, 2025, during mandated airport closures.

19. But this was never covered by TTW.

20. Instead — perhaps because the August 14 posting generated visits to the Website — TTW began on August 23, 2025 posting a barrage of articles over the next two months claiming operational problems at interCaribbean that have no basis in fact or reality. A true and correct copy of the August 23, 2025 article is attached as **Exhibit C**.

21. The August 23, 2025 article states "The Caribbean has been hit with Bad [sic] weather conditions disrputing [sic] travel in the region which resulted in InterCaribbean, Seaborne and Caribbean Airlines cancelling over a dozen flights serving passengers from the US, Barbados, Puerto Rico, Dominica, US Virgin Islands, Grenada, and other region countries." *See* Exh. C. At least with respect to interCaribbean, none of this is true.

22. The article went on to suggest that these cancellations "anger[ed] mortified passengers all over the region" as "[m]any travelers found themselves stranded." *See* Exh. C. Again, this is not true.

23. The article referred to these alleged cancellations as part of an "ongoing pattern of cancellations," which also is not true. *See* Exh. C.

24. The article stated that "InterCaribbean Airways experienced 5 cancellations, or 8% of its flights, primarily affecting routes between Barbados, Saint Vincent, and Grenada." *See* Exh. C. This never occurred.

25. The article stated that "[t]hese cancellations disrupted travel plans for dozens of passengers, particularly those heading to less-frequented destinations within the Caribbean." *See* Exh. C. Given that the cancellations were not real, this obviously is not true.

26. The article stated that "[m]any have been left stranded in airports, unable to get to their intended destinations or stuck at connecting hubs with no clear alternative routes. The travel disruptions are causing significant inconvenience for travelers, with some even facing delays lasting several days as airlines work to accommodate new flight schedules." *See* Exh. C. Such statements, which have no basis in reality, obviously impact whether travelers choose to fly on interCaribbean.

27. The August 14 and August 23 articles were just the beginning. Attached as **Exhibit D** is a table listing the ***44*** substantially similar articles that TTW has published about interCaribbean since August 14, 2025, with each article falsely claiming significant operational problems, flight cancellations, and stranded passengers.

28. None of what TTW has published about interCaribbean is true, but some claims are particularly egregious because they are obviously false.

29. Many articles referred to "cancellations" of alleged flights that were never actually scheduled.

30. The September 5, 2025 article falsely state that "thousands of passengers" were affected by the cancellation of 19 flights, a number that is impossible given interCaribbean's fleet capacity.

31. Other articles presented speculation as fact and included false and misleading editorial commentary about interCaribbean's business operations. *See, e.g.,* Sept. 5, 2025 article ("The cancellations, driven by various operational issues, have left many stranded at the airports, scrambling to find alternatives for their flights. This article delves into the details of these disruptions, the affected airports, and the inconvenience caused to travelers in the Caribbean."); Sept. 7, 2025 article ("interCaribbean Airways' recent flight cancellations have affected key Caribbean routes and caused significant inconvenience for passengers. While such disruptions are sometimes unavoidable due to weather, technical issues, or operational challenges, airlines must prioritize clear communication and efficient rebooking options to reduce the impact on affected travelers.").

32. And many of the articles used AI-generated images of supposedly stranded interCaribbean passengers, misrepresented as being authentic. *See, e.g.,* Exh. D, Aug. 26, 2025

article, Sept. 3, 2025 article, Sept. 4, 2025, Sept. 8, 2025 article, Sept. 28, 2025 article, Sept. 29, 2025 article.

33. The damage done by TTW extends beyond the Website, as regional outlets in the Caribbean have republished the false reporting verbatim, adopting TTW's language and even reusing the same AI imagery.

34. As a result of these articles, interCaribbean has received outreach from many customers, potential customers, and business partners expressing concerns.

35. For example, on August 27, 2025, the CEO of interCaribbean's largest tourist board partner forwarded a travel alert based on one of these false articles.

36. At the WTE Trade Show in Miami in mid-September 2025, a TTW public relations representative approached the interCaribbean display stand and during this visit, interCaribbean advised the representative of this issue.

37. That representative assured interCaribbean he would contact TTW's CEO to address this issue. But no changes have been made, and the representative did not respond to calls to the phone number on his business card.

38. On September 26, 2025, interCaribbean's counsel sent a cease and desist letter. *See* Exh. A.

39. TTW not only ignored that letter, but proceeded to publish 20 additional articles, making the same blatantly false statements, demonstrating a reckless disregard for the truth.

**COUNT I – DEFAMATION**

40. interCaribbean incorporates Paragraphs 1 through 39 by reference as if fully set forth herein.

41. As set forth in detail above, TTW has made many false and defamatory statements about interCaribbean to what it claims are "more than 20 million readers globally."

42. These statements are defamatory *per se* because they injure interCaribbean in its business — if the statements published by TTW were true (they are not), they suggest that interCaribbean is incapable of successfully operating an airline.

43. TTW's articles are based on no facts whatsoever. Even the most basic reporting or fact-checking would have revealed that the statements in these articles were false.

44. Moreover, at least as early as September 26, 2025, TTW was on notice that its articles were false and yet continued to publish substantially similar articles.

45. Accordingly, TTW acted negligently and/or with reckless disregard for the truth of its statements in making them.

46. TTW's statements have significantly damaged interCaribbean's reputation in the marketplace — interCaribbean has heard from many concerned travel ministers, heads of national tourism bureaus, industry contacts and travelers who, because of TTW's articles, believe that interCaribbean is unreliable and/or on the verge of going out of business.

WHEREFORE, interCaribbean prays for preliminary and permanent injunctive relief barring TTW from making further defamatory statements about interCaribbean, an order requiring TTW to make a public retraction of the defamatory statements and remove all articles on the Website containing those statements, an award of general and special damages, costs, and prejudgment interest, and or such other relief as the Court deems just and proper.

## COUNT II – TORTIOUS INTERFERENCE

47. interCaribbean incorporates Paragraphs 1 through 39 by reference as if fully set forth herein.

48. As an airline that is constantly courting both new paying passengers and new travel partners, interCaribbean has a host of potential business relationships.

49. Given its purported role in the travel and tourism industry, TTW is well aware of these potential business relationships.

50. Through its ongoing campaign of false articles undermining interCaribbean's credibility in the marketplace, TTW has demonstrated a clear intent to undermine interCaribbean's business relationships.

51. TTW's unjustified interference with interCaribbean's business has worked — many individuals have expressed directly to interCaribbean that they were planning to do business with interCaribbean, but now have concerns about the airlines reliability and stability.

52. Accordingly, interCaribbean has been damaged through lost customer and partner relationships, in an amount to be proven at trial.

WHEREFORE, interCaribbean prays for preliminary and permanent injunctive relief barring TTW from continuing to tortiously interfere with interCaribbean's business opportunities, an award of compensatory and punitive damages, costs, and prejudgment interest, and or such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

interCaribbean hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure as to all issues or claims for which a jury trial is allowed.

Dated: October 17, 2025
New York, New York

Respectfully submitted,

VEDDER PRICE P.C.

By: /s/ *Joshua A. Dunn*
Joshua A. Dunn
jdunn@vedderprice.com
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

Bryan Clark (*pro hac vice* forthcoming)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5001

*Counsel for Plaintiff interCaribbean, Ltd.*